IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**JUANITA PALACIOS,**

    **Plaintiff,**

    v.                                                                          Civil No. 11-1420 (GAG)

**FIRSTBANK PUERTO RICO,**

    **Defendants.**

**OPINION AND ORDER**

Plaintiff Juanita Palacios ("Plaintiff") brings this action alleging age discrimination under the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. §§ 621 *et seq*. Plaintiff also brings state law claims alleging violations of Puerto Rico Law 80 of May 30, 1976 ("Law 80"), P.R. LAWS ANN. tit. 29, §§ 185a *et seq*.; Puerto Rico Law 100 of June 30, 1959 ("Law 100"), P.R. LAWS ANN. tit. 29, §§ 146 *et seq*.; Puerto Rico Law No. 115 of December 20, 1991 ("Law 115"), P.R. LAWS ANN. tit. 29, § 194a; and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 and 1803"), P.R. LAWS ANN. tit. 31, §§ 5141 and 5142. Plaintiff filed this action against her former employer First Bank Puerto Rico ("Defendant" or "First Bank"). Presently before the court is Defendant's motion for summary judgment (Docket No. 26). Plaintiff opposed the motion (Docket No. 38). After reviewing these submissions and the pertinent law, the court **GRANTS in part and DENIES in part** First Bank's motion at Docket No. 26.

**I.     Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED.R.CIV.P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it

**Civil No. 11-1420 (GAG)**                                    2

'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED.R.CIV.P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.     Relevant Factual Background**

Plaintiff began working for Defendant on April 20, 1987, as a Project Leader in the Programming Department. (See Docket Nos. 26-1 at ¶ 1; 39 at ¶ 1.) She was appointed Programming Supervisor in the Programming Department on June 3, 1992. (See Docket Nos. 26-1 at ¶ 2; 39 at ¶ 2.) Plaintiff received Defendant's employee manual on several occasions during her employment, which included Defendant's open policy for employees to express their complaints as well as the equal employment opportunity policy that provides procedural steps to voice any such

**Civil No. 11-1420 (GAG)**                               3

complaints. (See Docket Nos. 26-1 at ¶ 3; 39 at ¶ 3.) The employee manual includes job descriptions for each position, but these duties are subject to change depending on Defendant's needs. (See Docket No. 26-1 at ¶ 4; 39 at ¶ 4.) A Programming Supervisor has the following duties: (1) meet with different business areas to analyze and attend their requirements; (2) evaluate the viability of each requirement; (3) select and assign a programmer to work with each requirement; (4) coach the programmers and assist them by offering technical assistance in the development of their programs; (5) supervise the tasks assigned to the programmers and safeguard timely completion of each project; (6) evaluate the programmers; (7) design, develop and implement new programs; (8) prepare progress reports of the applications under her responsibility, participate in the evaluation of the effectiveness of new programs and of their changes; (9) plan meetings with the users to make viable the development of new projects related with existing applications; and (10) ensure programmer attendance at trainings and seminars within the institution and monitor their working conditions. (See Docket Nos. 26-1 at ¶ 5; 39 at ¶ 5.)

Beginning in 2006 and extending through 2010, First Bank realized it was in financial trouble and forecasted its financial condition would continue to worsen in the near future. (See Docket Nos. 26-1 at ¶ 7; 39 at ¶ 7.) In response to this forecast, Defendant launched a Business Rationalization ("BR") initiative aimed at reducing costs and increasing profits. (See Docket Nos. 26-1 at ¶ 9; 39 at ¶ 9.) The parties dispute whether this initiative originally included the termination of employees and elimination of positions. (See id.) Defendant implemented the BR over time and in phases. During the third phase of the BR, First Bank began eliminating positions and reducing performance bonuses. (See Docket Nos. 26-1 at ¶ 14; 39 at ¶ 14.) During this time, the System Support Department conducted a risk analysis, concluding that certain positions were not critical to operation; however the parties dispute whether this report suggested Plaintiff's position should be eliminated. (See Docket Nos. 26-32 at 5-6; 60-1 at 22.)

On October 30, 2007, Erie Perez ("Perez") began working at First Bank as the Corporate Technology Officer. (See Docket Nos. 26-1 at 16; 39 at ¶ 16.) In October, 2009, Juan Soto Arvelaiz

**Civil No. 11-1420 (GAG)**                    4

was appointed System Development Director and reported directly to Perez. (See Docket Nos. 26-1 at 17; 39 at 17.)

The Design and Analysis Department handles the design analysis related to Requirements, while the System Support Department creates plans and best practices for validations and remedies for system failures. (See Docket No. 26-1 at ¶ 19; 39 at ¶ 19.) Formalizing Requirements for the Corporate Technology Group involves the making, assessment and analysis of the petitions made by the sponsors, verifying licenses, databases and servers in order to show the clients the functional and non-functional aspects. (See Docket Nos. 26-1 at ¶ 20; 39 at ¶ 20.) The Mainframe Department performs software construction through the bank's core system while the Open Systems Department deals with software construction. (See Docket Nos. 26-1 at ¶ 21; 39 at ¶ 21.) Guillermo Mascarell ("Mascarell") was hired as the Manager of the Analysis and Design Department on October 22, 2009. (See Docket Nos. 26-1 at ¶ 25; 39 at ¶ 25.) He is thirty-seven years old. (See Docket Nos. 40 at ¶ A; 53 at ¶ A.) In that position, Mascarell handles all the requirements petitions made by First Bank. (See Docket No. 26-1 at ¶ 26; 39 at ¶ 26.) His essential duties include: (1) coaching and mentoring the team under his supervision; (2) establishing goals and objective for staff; (3) conducting performance review of the staff and professional development plans; (4) teaching the gathering of requirements and design methodologies; (5) planning and directing business analysis and design aspects of technologies system delivery; (6) guiding evaluation and consultation of solution tradeoffs and application design to ensure the decisions taken align with business goals and corporate standards. (See Docket Nos. 26-1 at ¶ 26; 39 at ¶ 26.)

**Defendant's View on Plaintiff's Responsibilities**

Defendant maintains Plaintiff worked as a Programming Supervisor in the Programming Department. (See Docket No. 26-12.) Defendant admits it discussed with Plaintiff regarding a possible promotion to a managerial position, but maintains it never offered the position to Plaintiff. (See Docket Nos. 26-114; 26-116.) After the reorganization, and pursuant to the BR, Plaintiff continued performing the duties of a Program Supervisor, as she received Requirements from the

**Civil No. 11-1420 (GAG)**                                                5

system as an input to the testing process to determine the criteria for acceptance and how the solution would be validated. (See Docket Nos. 26-1 at ¶ 36; 39 at ¶ 36.) The only duty she did not perform after the reorganization for which she previously was responsible, was supervising other employees. (See Docket No. 26-116.) After her termination, no one was hired to replace her as a Programming Supervisor.

**Plaintiff's View on Plaintiff's Responsibilities**

After meeting with Perez, Plaintiff understood Defendant was creating a new position for her titled Requirements Manager. (See Docket No. 60-1 at 3.) After being offered the position, her job duties began to change. (See Docket No. 60-1 at 4.) She began to educate herself by reading materials that would allow her to perform her new duties and met with Rafael Serrano ("Serrano") to discuss her new responsibilities. (See Docket No. 60-3.) Plaintiff began working with Serrano on a project and believed her position had officially changed. (See Docket No. 60-4.) Plaintiff received a new parking assignment with the title "Audit and Compliance Manager." (See Docket No. 40-11.) In an e-mail, Senior Vice-President Miguel Mejias described her duties as including those of a Programming Supervisor in addition to "the definition of the standard of the documents of 'Software Requirements specifications'. [sic] 'Functional Specification Documents' and 'Test Plan Document' with the consensus of the areas of development." (Docket No. 60-12.)

**Plaintiff's Termination**

The parties do agree that Marscarell was appointed in October 2009 and that Plaintiff was laid off on July 2, 2010. (See Docket Nos. 26-1 at ¶ 50; 39 at ¶ 50.) Plaintiff was fifty-nine years old at the time of her termination. (See Docket 26-88.) The parties also agree that no new employees have been hired after Plaintiff's termination. (See Docket Nos. 26-1 at ¶ 52; 39 at ¶ 52.) The position of Programming Supervisor once held by Plaintiff no longer exists. (See Docket Nos. 26-1 at ¶ 54; 39 at ¶ 54.)

**Alleged Discriminatory Remarks**

During a meeting in which Plaintiff and Perez were present, Perez used the term "viejitos" to refer to another worker. (See Docket Nos. 40 at ¶ I; 53 at ¶ I.) The parties disagree as to the exact

**Civil No. 11-1420 (GAG)**                                                         6

context in which the term was used, as well as whom Perez was referencing. (See id.) Plaintiff understood Perez was saying that the past reorganization was unsuccessful because old people were unable to adapt to or carry out the necessary structural changes. (See Docket No. 60-1 at 14.) Defendant argues Perez only referred to Joaquin Negron, an employee of First Bank who was hired after Plaintiff, and that this was an isolated incident. (See id.)

### Confidential Separation Agreement and General Release

Plaintiff signed a Separation Agreement and General Release ("Separation Agreement") upon her termination by Defendant. (See Docket No. 26-148.) The Separation Agreement details the total sum First Bank was responsible for paying Plaintiff, primarily in return for Plaintiff's waiver of all potential future claims against First Bank. The Separation Agreement specifically states Plaintiff agrees to waive any age discrimination, Law 80 and Law 100 claims against Defendant. (See id. at ¶ 5.) Paragraph 1 states Defendant shall pay Plaintiff $78,414.82, payment for regular vacation days Plaintiff accrued, and a $600 end of year bonus. (See Docket No. 26-148 at ¶ 1.) The Separation Agreement includes a severability clause stating that if any clause is found to be null and void by a court, the rest of the Separation Agreement remains in full force and effect. (See id. at ¶ 13.)

**III.   Legal Analysis**

In its motion for summary judgment, Defendant contends that Plaintiff cannot establish a case of age discrimination. (See Docket No. 26-159 at 19.) Defendant argues Plaintiff cannot show that the decision to terminate her position pursuant to the BR was made due to discrimination based on age. (See id.) Further, Defendant argues that if Plaintiff does provide sufficient evidence to meet her *prima facie* case, Plaintiff fails to demonstrate the BR was a pretext to firing Plaintiff due for her age. (See id. at 20.)

   **A.   ADEA**

The ADEA makes it unlawful for an employer to "fail or refuse to hire or discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). In assessing an ADEA claim where there is no direct evidence of discrimination, the court applies the burden shifting framework established in McDonnell Douglas

**Civil No. 11-1420 (GAG)**                                              7

Corp. v. Green, 411 U.S. 792 (1973). See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000) (assuming that the McDonnell Douglas framework applies to an ADEA claim, and applying it to such a claim, "[b]ecause the parties do not dispute the issue."); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993) (finding that in absence of direct evidence of age discrimination, an ADEA claim is governed by burden-shifting framework set forth in McDonnell Douglas).

A *prima facie* case for age discrimination under the ADEA requires a plaintiff to prove: (1) that he was over 40 years old; (2) that he has met his employer's legitimate job expectations; (3) that the employer took adverse action against him and; (4) that the employer did not treat age neutrally or that younger persons were retained in the same position. See Phair v. New Page Corp., 708 F. Supp. 2d 57, 63-64 (1st Cir. 2010) (citing Goldman, 985 F.2d at 1117; Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 333 (1st Cir. 1997)). According to the First Circuit, a plaintiff's burden to demonstrate a *prima facie* case is relatively easy to meet. See Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004) (referring to a *prima facie* case as a "modest showing"); Zapata-Matos v. Reckitt & Colman, Inc., 227 F.3d 40, 44 (1st Cir. 2002) (describing it as "the low standard of showing *prima facie* discrimination").

Under the McDonnell Douglas burden shifting framework, once this *prima facie* case is shown, a presumption of discrimination arises and the burden of production then shifts to the defendant employer to show a "legitimate, non-discriminatory reason" for the termination. See Rathbun, 361 F.3d at 71. If the defendant satisfies its burden of production, the presumptions and burdens of the McDonnell Douglas framework are "no longer relevant." Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 (1st Cir. 2009) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993)). "In such a situation, the plaintiff then has the full and fair opportunity to demonstrate, through presentation of his own case and through examination of the defendant's witnesses, that the proffered reason was not the true reason for the employment decision, . . . and that age was." Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 25 (1st Cir. 1998) (quoting St. Mary's, 509 U.S. at 507-08) (internal quotation marks and citations omitted)).

**Civil No. 11-1420 (GAG)**                                                8

"Plaintiff is required to do more than simply refute or cast doubt on the employers' rationale." Carmona Rios v. Aramark Corp., 139 F. Supp. 2d 210, 217 (D.P.R. 2001). The Supreme Court has declared that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009). This 'but for' standard is a much higher standard than that which has been applied to Title VII cases. Id. at 177-78. It means "that age was the 'reason' that the employer decided to act." Id. at 168 (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).

Defendant's motion for summary judgment assumes that Plaintiff has established the first three prongs of the *prima facie* case of age discrimination. (See Docket No. 26-159 at 19.) The court agrees there is sufficient evidence on the record to demonstrate all three prongs, therefore, the court shall proceed to analyze the fourth prong.

Plaintiff supports her theory that Defendant did not treat age neutrally during the BR because the duties she performed prior to her termination were given to Mascarell, a significantly younger, relatively new hire. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996) (holding replacement substantially younger than Plaintiff to be an indicator of age discrimination). Plaintiff provides evidence that she performed the duties of the Requirement Manager in addition to her duties as a Programming Supervisor prior Mascarell's hiring. She also contends the evidence demonstrates that she was informally offered the position, began to educate herself regarding the new responsibilities of that position and that First Bank treated her as if she was performing the duties of that position. In sum, Plaintiff contends that summary judgment should be defeated because Plaintiff has demonstrated her duties were not simply absorbed by other employees, but were given to Mascarell to perform.

Defining Plaintiff's job duties is crucial to this litigation and is clearly in dispute. Both parties point to evidence that supports their positions; however, those positions cannot be reconciled as a matter of law. If a jury were to credit Plaintiff's testimony, then the jury could find that Plaintiff was performing the managerial functions now performed by Mascarell prior to her termination. The

**Civil No. 11-1420 (GAG)**                                9

evidence provided by Plaintiff is sufficient to allow a reasonable jury to arrive at this conclusion.

Additionally, Plaintiff points to a statement by Perez that unambiguously is negative towards older workers. The statement, while not directed at Plaintiff at the time it was uttered, is relevant to this action. Perez's statement conveys the meaning that a similar reorganization plan was previously attempted, but failed because those who were entrusted to make the changes were old and did not carry out the changes. (See Docket No. 53-71.) Perez is a senior officer at First Bank. This statement clearly means that he believes the previous reorganization was unsuccessful because old employees were unable to make the necessary changes. A reasonable jury could infer that Plaintiff was terminated because, as Perez believes, she was old and therefore unwilling or unable to make the necessary changes for successful reorganization. A jury could infer Mascarell was retained instead of Plaintiff because he was significantly younger than Plaintiff, and therefore more apt to make the BR successful. Taken as a whole, the evidence marshaled by Plaintiff is satisfies the fourth prong of the *prima facie* case.

Defendant has met its burden of production. Whatever the merits of an employer's business decision, "[it] is free to terminate an employee for any nondiscriminatory reason." Webber v. Int'l Paper Co., 417 F.3d 229, 238 (1st Cir. 2005) (citing Fennell v. First Step Designs, Ltd., 83 F.3d 526, 537 (1st Cir. 1996)). First Bank has provided a legitimate, non-discriminatory reason for Plaintiff's termination -the BR. Accordingly, Plaintiff must now show, by preponderance of the evidence, that Defendant's proffered reason is a pretext for discriminatory action. St. Mary's, 509 U.S. at 507-08.

A reasonable jury could credit Defendant's evidence and find Plaintiff's termination was without discriminatory animus. Defendant disagrees with Plaintiff's assertion that she performed any managerial duties and claims she only performed the duties of a Programming Manager. Defendant claims that Plaintiff's duties as a Programming Manager were absorbed by other employees in that department and that no one was hired to perform the duties formerly performed by Plaintiff. However, the presence of genuine issues of material fact is sufficient to defeat summary judgment in this case.

At the third stage of the McDonnel Douglas test, Plaintiff no longer enjoys the presumption

**Civil No. 11-1420 (GAG)**                                10

of discrimination. See Thermo King de Puerto Rico, 585 F.3d at 447. The court finds the evidence relied upon by Plaintiff to demonstrate her *prima facie* case also suffices to meet the third prong of the burden shifting test. If credited, the evidence could lead a jury to find the BR was used as a pretext to terminate Plaintiff because of her age. If the jury finds that Plaintiff acted as a manager prior to her termination, those duties were then given to Mascarell and that Perez's statement applied to this reorganization, then a reasonable jury could find Plaintiff has carried her burden of proof in this case.

Therefore, the court **DENIES** Defendant's motion for summary judgment as to Plaintiff's ADEA claim.

### B.      Waiver of State Causes of Action

Defendant argues Plaintiff cannot succeed on her state law claims because she signed a waiver of all such claims when leaving First Bank. (See Docket No. 26-159 at 26-30.) Plaintiff does not dispute that she signed the Separation Agreement, however, Plaintiff argues the waiver is invalid. The parties agree Plaintiff signed the Separation Agreement, that the Separation Agreement included a waiver of Plaintiff's ADEA claim and that the Separation Agreement did not comport with the special release requirements of the Older Workers' Benefit Protection Act ("OWBPA"). (See Docket Nos. 26-158 at 26-27; 38 at 35-38.) Because the parties agree the waiver did not effectively waive Plaintiff's ADEA claim, the court need only decide whether the Separation Agreement validly waived her non-ADEA state law claims.

#### 1.      Severability Clause

The waiver Plaintiff signed contains a severability clause which states, "In case a court with jurisdiction declares any party, clause or obligation of this Agreement null, invalid or that it cannot be complied with, the rest of this document will continue with full force and effect." (Docket No. 26-148 at ¶ 13.) Defendant argues the severability clause allows the remainder of the release to have full force and effect. (See Docket No. 26-159 at 26.) Defendant argues that if the rest of the waiver remains intact, then Plaintiff is precluded from pursuing her state law claims. (See id.)

The First Circuit has upheld waivers of claims even though a waiver was invalid as to an

**Civil No. 11-1420 (GAG)**                    11

ADEA claim. See Stonkus v. City of Brockton School Dept., 322 F.3d 97, 103 (1st Cir. 2003) (holding state law age discrimination claim not covered by OWBPA); Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 11 (1st Cir. 1997). See also Commonwealth of Massachusetts v. Bull HN Information Systems, Inc., 143 F. Supp. 2d 134, 160 (D. Mass. 2001). The First Circuit has consistently found waivers of future claims valid when the plaintiff receives additional benefits in exchange. See Stonkus, 322 F.3d at 102 ("courts have routinely upheld releases given in exchange for additional benefits."); Rivera-Flores, 112 F.3d at 11 ("Courts have, in the employment law context, commonly upheld releases given in exchange for additional benefits."). As these precedents dictate, if Plaintiff signed the waiver for additional benefits, then Plaintiff has waived her right to pursue these state law claims.

**2.    Additional Benefits in Exchange for Plaintiff's Waiver**

Plaintiff argues she did not receive any additional compensation or benefits for waiving her right to seek judicial relief. (See Docket No. 38 at 28.) In fact, Plaintiff argues she did not receive the minimum statutory compensation required by the Puerto Rico Unjust Discharge Act, a statutory minimum that legally cannot be waived. P.R. LAWS ANN. tit. 29 § 185a *et seq.* This law is "unwaiveable" and states that employees discharged without cause have the right "to receive the compensation provided in § 185a of this title . . . Any contract or part thereof in which the employee waives the compensation to which he is entitled to, pursuant to §§ 185a-185m of this title, shall be null and void." P.R. LAWS ANN. tit. 29 § 185i. It is uncontested that Plaintiff worked for First Bank for over twenty years. (See Docket Nos. 26-1 at ¶¶ 1, 50; 38 at ¶¶ 1, 50.) As such, she was entitled to six months salary plus roughly sixty-nine additional weeks of compensation, pursuant to Section 185a. P.R. LAWS ANN. tit. 29, § 185a.[1] The waiver states that Plaintiff received $78,414.82,

---

[1] In relevant part, Section 185a states:
Every employee in commerce, industry, or any other business or work place, designated hereinafter as the establishment, in which he/she works for compensation of any kind, contracted without a fixed term, who is discharged from his/her employment without just cause, shall be entitled to receive from his/her employer,

**Civil No. 11-1420 (GAG)**                              12

payment for her accrued vacation days and $600 for the "2010 Christmas Bonus as established by law." (See Docket No. 26-148 at ¶ 3.) These monies do not meet the minimum requirements as set out by Section 185a.[2] Plaintiff's six-month salary pursuant to Section 185a(a) and weekly salary pursuant to Section 185a(b) are well over $100,000. Plaintiff received less than that amount under the Separation Agreement. The evidence demonstrates that Plaintiff did not receive the statutory minimum when she was laid off. Accordingly, the evidence shows that Plaintiff did not receive additional benefits or compensation in return for waiving all potential claims related to her termination.

The law is clear in this respect, Plaintiff must receive additional benefits in exchange for her waiver of potential claims. See Stonkus, 322 F.3d at 102; Rivera-Flores, 112 F.3d at 11. Plaintiff did not receive additional benefits; therefore, the waiver of her state law claims in not valid and those claims will be put to the jury. The court **DENIES** Defendant's motion for summary judgment

---

in addition to the salary he/she may have earned:

(a) The salary corresponding to two (2) months, as indemnity, if discharged within the first five (5) years of service; the salary corresponding to three (3) months if discharged after five years (5) and up to fifteen (15) years of service; the salary corresponding to six (6) months if discharged after fifteen (15) years of service.

(b) An additional progressive compensation equal to one (1) week for each year of service, if discharged within the first five (5) years of service; to two (2) weeks for each year of service, if discharged after five (5) years and up to fifteen (15) years of service; to three (3) weeks for each year of service if discharged after fifteen (15) years of service.

P.R. LAWS ANN. tit. 29, § 185a.

[2] The Separation Agreement includes other incentives, such as healthcare contributions and participation in the Employee Assistance Program that are not relevant to this analysis. (See Docket No. 26-148 at ¶¶ 2 & 3.) The Separation Agreement specifically states Plaintiff waives her right to any claims "[i]n consideration of the payment described in Paragraph 1." (Id. at ¶ 5.) The Separation Agreement contains similar language in Paragraph 7. The healthcare contributions and participation in the Employee Assistance Program are found in Paragraphs five and seven, respectfully.

**Civil No. 11-1420 (GAG)**                              13

as to the state law claims.

### C. State Law Claims

Plaintiff pleads supplemental state law claims under Law 80, Law 100 and Law 115.

#### 1. Laws 80 and 100

Law 80 provides a remedy for unjust dismissal. See P.R. LAWS ANN. tit. 29, § 185b. A dismissal without just cause is "[one] made by mere whim or fancy of the employer or without cause relative to the normal operation of the establishment." P.R. LAWS ANN. tit. 29, § 185b. The statute allows termination for a number of reasons related to the employee's job performance, including an employee's improper and disorderly conduct, negligent attitudes toward her work, and violations of the employer's policies. See id.; Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998). The employer bears the ultimate burden to prove that it had just cause to terminate the employee. See P.R. LAWS ANN. tit. 29, § 185k; Alvarez-Fonseca, 152 F.3d at 28.

Law 100 is the Puerto Rico anti-discrimination statute. See P.R. LAWS ANN. tit. 29, § 146. The analysis under the ADEA and Law 100 is practically the same. See Mojica v. El Conquistador Resort and Golden Door Spa, 714 F. Supp. 2d 241, 262 (D.P.R. 2010). "As applied to age discrimination, [Law 100] differs from the ADEA only with respect to how the burden-shifting framework operates." Davila, 498 F.3d at 18 (citing Cardona Jimenez v. Bancomerico de P.R., 174 F.3d 36, 42 (1st Cir. 1999)). Under Law 100, a plaintiff has two requirements to establish a *prima facie* case: (1) she must demonstrate that she was actually or constructively discharged, and; (2) she must allege that the decision was discriminatory. Hoyos v. Telecorp Communications, Inc., 488 F.3d 1, 6 (1st Cir. 2007) (citations omitted).

For the aforementioned reasons, there are genuine issues of material fact regarding the reasons for Plaintiff's termination. Accordingly, the court **DENIES** Defendant's motion for summary judgment as to these claims.

#### 2. Law 115

The final claim before the court is Plaintiff's Law 115 claim. Law 115 forbids employers from discriminating against employees for offering written or verbal testimony before legislative,

**Civil No. 11-1420 (GAG)**                              14

judicial or administrative forums. P.R. LAWS ANN. tit 29 § 194a. The complaint in this case does not contain any factual allegations that Plaintiff was retaliated against because she participated protected conduct. Plaintiff's memorandum (Docket No. 38) opposing Defendant's motion for summary judgment does not argue that Plaintiff suffered from retaliation. Therefore, Plaintiff's Law 115 claim is **DISMISSED**.

**IV.     Conclusion**

For the foregoing reasons, the court **GRANTS in part and DENIES in part** First Bank's motion for summary judgment at Docket No. 26. Remaining before the court are Plaintiff's ADEA, Law 80, Law 100, and Articles 1802 and 1803 claims.

**SO ORDERED**

In San Juan, Puerto Rico this 29th day of August, 2012.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge